UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2015 Grand Jury

| UNITED STATES OF AMERICA, | SA CR No. 12-277(A)-AG |
|---|---|
| Plaintiff, | **FIRST SUPERSEDING INDICTMENT** |
| v. | |
| WENFENG LU, | [18 U.S.C. § 1832(a): Theft and Unauthorized Possession of Trade Secrets; 18 U.S.C. §§ 1834 and 2323: Forfeiture] |
| Defendant. | |

The Grand Jury charges:

## INTRODUCTION

At all times relevant to this First Superseding Indictment:

A. <u>ev3/Covidien</u>

1. ev3/Covidien ("ev3") was a publically traded corporation whose business focused on the development and manufacture of vascular and neurovascular medical devices. ev3 maintained a corporate office in Orange County, within the Central District of California. ev3 sold and shipped, and intended to sell and ship its products in interstate and foreign commerce.

2. ev3 developed a clot retrieval device ("TRADE SECRET #1"). TRADE SECRET #1 was a mechanical thrombectomy device with an

expandable tip able to retrieve and remove blood clots from a blood vessel. ev3 intended to sell TRADE SECRET #1 throughout the United States, Europe, and Asia. ev3's research and development cost for this device was between $250,000 and $2.8 million.

3. ev3 developed a vascular remodeling device ("TRADE SECRET #2"). TRADE SECRET #2 was a stent that bridged the neck of an aneurysm, strengthening the blood vessel to prevent a blood clot from bursting. ev3 intended to sell TRADE SECRET #2 throughout the United States, Europe, and Asia. ev3's research and development cost for this device was between $260,000 and $1.6 million.

4. ev3 developed standard operating procedures for the braiding of its Balloon Guide Catheter ("BGC") ("TRADE SECRET #3"). The standard operating procedure is a detailed written instruction intended to ensure uniformity of the performance of the BGC. ev3 used TRADE SECRET #3 in devices shipped throughout the United States, Europe, and Asia.

5. ev3 developed a technical description and list of parts needed for the manufacture of a heat shrink skiver ("TRADE SECRET #4"). A heat shrink skiver is a device used to separate polymer from metal on a raw material. ev3 used TRADE SECRET #4 in devices shipped throughout the United States, Europe, and Asia.

6. TRADE SECRETS #1-4 were considered trade secret information by ev3 and were protected by ev3 as confidential and proprietary information. ev3 used a number of measures to protect its trade secrets and its confidential proprietary information, including the following:

      a.    Limiting physical access to the locations within the company where the trade secrets were stored through the use of security personnel and access badges;

      b.    Limiting access to the trade secrets only to those who need them to perform their employment duties;

      c.    Requiring employees to sign nondisclosure and confidentiality agreements that prohibited disclosure of trade secrets and confidential and proprietary information and extended beyond the length of employment;

      d.    Mandating visitor sign-in sheets and escorts;

      e.    Providing training and instruction regarding the security and safeguarding of restricted and confidential business information; and

      f.    Labeling trade secret documents as confidential.

7.    From in or around January 2009 through on or about October 7, 2011, defendant WENFENG LU ("LU") was employed as a Research and Development Staff Engineer at ev3 in Orange County, California. Among other things, defendant LU was responsible for developing the delivery system for TRADE SECRET #1, or, in other words, the means by which TRADE SECRET #1 would arrive at the appropriate location in the body.

B.    <u>Edwards Lifesciences Corporation</u>

8.    Edwards Lifesciences Corporation ("Edwards") was a publically traded corporation whose business focused on the design and manufacture of heart valves and hemodynamic monitoring devices. Edwards' corporate headquarters was located in Orange County, within the Central District of California. Edwards sold and shipped, and

intended to sell and ship its products in interstate and foreign commerce.

9. Edwards developed and manufactured the SAPIEN transcatheter heart valve and delivery system ("TRADE SECRET #5"). TRADE SECRET #5 was a replacement heart valve with a transfemoral delivery system. Edwards sold TRADE SECRET #5 throughout the United States and Europe. The development costs for TRADE SECRET #5 exceeded $500 million.

10. Edwards developed the CENTERA transcatheter aortic valve and delivery system ("TRADE SECRET #6"). TRADE SECRET #6 was an ultra low-profile self-expanding aortic valve with a motorized delivery system. Edwards intended to sell TRADE SECRET #6 throughout the United States, Europe, and Asia. The development costs for TRADE SECRET #6 exceeded $100 million.

11. Edwards developed and manufactured the INTUITY Elite replacement heart valve and delivery system ("TRADE SECRET #7"). TRADE SECRET #7 was a heart valve requiring fewer sutures and a less invasive surgery than other heart valves on the market. Edwards sold TRADE SECRET #7 throughout the United States, Europe, and Asia.

12. Edwards developed, manufactured, and used balloon technology ("TRADE SECRET #8"). TRADE SECRET #8 allowed Edwards' products to be inserted into blood vessels. Edwards used TRADE SECRET #8 in devices shipped throughout the United States, Europe, and Asia.

13. TRADE SECRETS #5-8 were considered trade secret information by Edwards and were protected by Edwards as confidential and proprietary information. Edwards used a number of measures to protect its trade secrets and its confidential proprietary information, including the following:

4

     a.   Limiting physical access to the locations within the company where the trade secrets were stored through the use of security personnel and access badges;

     b.   Limiting access to the trade secrets only to those who need them to perform their employment duties;

     c.   Requiring employees to sign nondisclosure and confidentiality agreements that prohibited disclosure of trade secrets and confidential and proprietary information and extended beyond the length of employment;

     d.   Mandating visitor sign-in sheets and escorts;

     e.   Providing training and instruction regarding the security and safeguarding of restricted and confidential business information; and

     f.   Labeling trade secret documents as confidential.

14.   From on or about November 1, 2011 through on or about November 16, 2012, in Orange County, within the Central District of California, defendant LU was employed as a Research and Development Staff Engineer at Edwards in Orange County, California. Among other things, defendant LU was responsible for developing the catheter delivery system for TRADE SECRET #6.

## COUNTS ONE THROUGH FOUR
[18 U.S.C. §§ 1832(a)(1), 1832(a)(4)]

15. The allegations set forth in paragraphs One through Fourteen of this First Superseding Indictment are incorporated herein as if set forth in full.

16. On or about October 7, 2011, in Orange County, within the Central District of California, and elsewhere, defendant WENFENG LU ("LU"), with the intent to convert a trade secret to the economic benefit of someone other than ev3/Covidien ("ev3"), and intending and knowing that the offense would injure ev3, did knowingly steal, and without authorization appropriate, take, carry away and conceal, and by fraud, artifice and deception obtain information, and attempt to do so, the following trade secrets, owned by ev3, which were related to and included in products that were produced for or placed in interstate and foreign commerce:

| COUNT | TRADE SECRET |
|---|---|
| ONE | TRADE SECRET #1 |
| TWO | TRADE SECRET #2 |
| THREE | TRADE SECRET #3 |
| FOUR | TRADE SECRET #4 |

17. Defendant LU's conduct was in violation of Title 18, United States Code, Sections 1832(a)(1) and 1832(a)(4).

COUNTS FIVE THROUGH TWELVE

[18 U.S.C. §§ 1832(a)(3), 1832(a)(4)]

18. The allegations set forth in paragraphs One through Fourteen of this First Superseding Indictment are incorporated herein as if set forth in full.

19. On or about November 16, 2012, in Los Angeles County, within the Central District of California and elsewhere, defendant WENFENG LU ("LU"), with the intent to convert a trade secret to the economic benefit of someone other than ev3/Covidien ("ev3") and Edwards Lifesciences Corporation ("Edwards"), and intending and knowing that the offense would injure ev3 and Edwards, did knowingly receive and possess a trade secret, knowing the same to have been stolen and appropriated, obtained, and converted without authorization, and attempt to do so, the following trade secrets owned by ev3 and Edwards, which were related to and included in products that were produced for and placed in interstate and foreign commerce:

| COUNT | OWNER | TRADE SECRET |
|---|---|---|
| FIVE | ev3 | TRADE SECRET #1 |
| SIX | ev3 | TRADE SECRET #2 |
| SEVEN | ev3 | TRADE SECRET #3 |
| EIGHT | ev3 | TRADE SECRET #4 |
| NINE | Edwards | TRADE SECRET #5 |
| TEN | Edwards | TRADE SECRET #6 |
| ELEVEN | Edwards | TRADE SECRET #7 |
| TWELVE | Edwards | TRADE SECRET #8 |

1    20.  Defendant LU's conduct was in violation of Title 18, United States Code, Sections 1832(a)(3) and 1832(a)(4).

FORFEITURE ALLEGATION

[18 U.S.C. §§ 1834 & 2323]

21. Pursuant to Title 18, United States Code, Sections 1834 and 2323, if the defendant WENFENG LU ("LU") is convicted of any of the offenses set forth in Counts One through Twelve of this First Superseding Indictment, he shall forfeit to the United States the following property:

    a. Any article, the making or trafficking of which is prohibited by the commission of any offense for which the defendant is convicted;

    b. Any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of said offense, including but not limited to the following property seized from the defendant on or about November 16, 2012:

        i. White & Yellow USB;

        ii. USB 3.0 found in wallet;

        iii. USB Data Traveler 2GB;

        iv. Sony Camera and SD card;

        v. Hewlett Packard laptop;

        vi. Lenovo G550 laptop;

        vii. Western hard drive, model number 4908A;

        viii. Western hard drive, model number 0312B;

        ix. Verbatim hard drive, model number WD200GB;

        x. Western hard drive, model number WD800JB;

        xi. Seagate hard drive, model number ST310212A; and

        xii. Hard drive (not labeled), model number SV0432D.

   c. Any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of said offense.

  22. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2), the defendant shall forfeit substitute property if, by any act or omission of the defendant, the property described in paragraph 21, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

           A TRUE BILL

           /S/
          Foreperson

EILEEN M. DECKER
United States Attorney

*[signature: Patricia A. Donahue]*

PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, Terrorism and Export Crimes Section

GREGORY STAPLES
Assistant United States Attorney

MARK TAKLA
Assistant United States Attorney

MIEKE TARWATER
Assistant United States Attorney