Daniel Olmos (SBN 235319)
Jonathan Baum (SBN 303469)
NOLAN BARTON BRADFORD & OLMOS LLP
600 University Avenue
Palo Alto, California 94301
650/326-2980 – Telephone
650/326-9704 – Facsimile

Counsel for Defendant
WENFENG LU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 8:12-cr-00277-AG-1 |
| Plaintiff, | **DEFENDANT WENFENG LU'S MOTION TO DISMISS COUNTS 1, 2, 5, 6, 9, 10 AND 11 OF THE SUPERSEDING INDICTMENT PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)** |
| vs. | |
| WENFENG LU, | |
| Defendant. | Date:  November 14, 2016<br>Time:  2:00 p.m. |

## INTRODUCTION

Defendant Wenfeng Lu hereby moves to dismiss Counts 1, 2, 5, 6, 9, 10, and 11 of the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 12(b), because these seven charges do not allege anything that could legally constitute a trade secret under 18 U.S.C. § 1839(3).

These seven counts relate to five of the eight alleged trade secrets in this case, identified in the Superseding Indictment as: ev3/Covidien clot retrieval device (Trade Secret #1); ev3/Covidien vascular remodeling device (Trade Secret #2); Edwards SAPIEN transcatheter heart valve and delivery system (Trade Secret #5); Edwards CENTERA transcatheter aortic

valve and delivery system (Trade Secret #6); and Edwards INTUITY Elite replacement heart valve and delivery system (Trade Secret #7).  Under 18 U.S.C. § 1839, these allegations cannot legally qualify as trade secrets because they are actual, physical products rather than information as the statute requires.

Section 1839 specifically defines a trade secret as "information." 18 U.S.C. § 1839(3). Under the statute, information may take many types and forms, and may be "stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing." *Id.* Nevertheless, a trade secret is, by its statutory definition, information.  In the present case, ev3/Covidien trade secrets 1 and 2 along with Edwards trade secrets 5, 6, and 7 (corresponding to Counts 1, 2, 5, 6, 9, 10 and 11 in the Superseding Indictment) fail as a matter of law because they allege physical products, rather than any specific information that may help comprise or otherwise inform the products, as trade secrets.[1]  This, the government may not do.

Further, even if the government were permitted by statute to allege that a physical product, rather than information, is a trade secret, the government here specifically alleges that trade secrets 5 and 7 *were already being sold in the marketplace* during the time period relevant to the Superseding Indictment.  Once again, the government runs afoul of the statutory requirements of the Economic Espionage Act.  According to the statutory definition of a trade secret under § 1839, a trade secret is information that derives independent economic value from the fact that it is not generally known, and which the owner takes reasonable measures to protect as a secret.  18 U.S.C. § 1839(3).  If the government purports to allege that a physical product

---

[1] As the Ninth Circuit explained in *United States v. Nosal*, 828 F.3d 865 (9th Cir. 2016), "[t]he notion of a trade secret often conjures up magic formulas, like Coca-Cola's proprietary formula, technical drawings, or scientific data," but also "includes financial and business information." *Id.* at 881.  Thus, Coke's proprietary formula may be a trade secret, but the entire can of Coke cannot be.  No court has ever held that an entire product itself can be a trade secret.

itself is a trade secret, the government certainly may not allege at the same time that the object is being marketed and sold in countries around the world (and is therefore no secret at all).

There has never been a case under the Economic Espionage Act anywhere in the country in which the government has alleged that a physical product intended for market, rather than information, is a trade secret. That is because Congress has specifically defined a trade secret as information. With respect to Counts 1, 2, 5, 6, 9, 10 and 11 in the Superseding Indictment, the government has failed to heed Congress's definition of a trade secret, and the charges therefore must be dismissed.

**STATEMENT OF FACTS**

Defendant Wenfeng Lu is an engineer who works in the medical device field. Born in China, Mr. Lu moved to the United States in 2000 to pursue his Ph.D. at Cleveland State University in Ohio. Mr. Lu became a legal permanent resident of the United States in 2005, and he has two young daughters who are U.S. citizens.

From January 2009 to October 2011, Mr. Lu worked as a research and development staff engineer at ev3/Covidien, a medical device company in Orange County, California. In October 2011, Mr. Lu left his position with ev3 to work at Edwards Lifesciences Corporation, another medical device company in Orange County. Mr. Lu worked at Edwards until he was arrested on November 17, 2012.

In November 2012, attorneys from Sheppard, Mullin, Richter & Hampton LLP, outside counsel for Edwards, initiated this matter by sending a 31-page memorandum, which included several hundred pages of attached exhibits, to the Justice Department requesting prosecution of Mr. Lu under the Economic Espionage Act, 18 U.S.C. § 1831-1832. That memorandum, dated November 8, 2012, asserted that Edwards had been monitoring Mr. Lu's email and server activity since at least September 2012, and had hired an outside consulting firm to conduct an internal investigation of Mr. Lu. The memorandum alleged (1) that Mr. Lu had misappropriated

Edwards trade secrets related to its CENTERA transcatheter delivery system, which Edwards had yet to release to market but asserted would be worth hundreds of millions of dollars once it did, (2) that he had no reason to possess the alleged trade secrets during the course of his employment at Edwards, and (3) that he intended to use the information to start a business in China. The memorandum identified eight different Edwards trade secrets that Mr. Lu had allegedly misappropriated – one of the alleged trade secrets was described as "standard operating procedures manuals," or SOPs, of which the memorandum asserted that Defendant Lu had copied "over four dozen." Notably, not a single one of the alleged trade secrets identified in the memorandum is now asserted in the Superseding Indictment. *See* Docket No. 117.

On November 16, 2012, just eight days after the date on the memorandum prepared by Edwards' outside counsel, the government filed its complaint against Mr. Lu. *See* Docket No. 1. The complaint alleged that Mr. Lu misappropriated eight Edwards trade secrets – the same eight purported trade secrets, in the same order and described using nearly identical language, as were identified in the November 8, 2012 Edwards memorandum.

On December 12, 2012, the government filed the original Indictment, which alleged eight violations of 18 U.S.C. § 1832(a) related to four purported Edwards trade secrets. *See* Docket No. 20. All four alleged trade secrets were SOPs. In other words, the original Indictment included only one of the eight "trade secrets" which were identified in the November 8 Edwards memorandum and the November 16 complaint. The other seven were not even mentioned. *Ibid*.

On July 17, 2014, the Court permitted undersigned counsel to substitute in as Mr. Lu's attorney in this matter. On June 12, 2015, defense counsel and a defense expert met with representatives from the U.S. Attorney's Office and the FBI in an effort to explain to the government the content and purpose of the SOPs then being alleged as trade secrets. The government invited representatives from Edwards, including from its outside counsel, to that meeting. During the meeting, defense counsel presented evidence that (1) the four alleged

Edwards trade secrets were not in fact trade secrets at all – the SOPs were merely instructional manuals on how to operate various test machines manufactured by third parties and used by Edwards; (2) Mr. Lu himself had co-authored two of the manuals, and he was directly emailed the two others by one of his Edwards colleagues; (3) there was no evidence that Mr. Lu had provided any of the manuals to anybody else (and in fact there would be no conceivable reason for Mr. Lu to do so because they were instructional manuals on how to operate Edwards machinery and thus would be worthless to a third party); and (4) Mr. Lu was intending to develop a hand-braided biodegradable stent in China (rather than a machine-generated stent), which neither of his former employers designed or produced.

In May 2016 – almost one year after that in-person meeting and more than three and a half years after the original Indictment was filed – the government filed the Superseding Indictment, which now alleges twelve violations of 18 U.S.C. § 1832(a) related to eight entirely new alleged trade secrets.

Four of the alleged trade secrets in the Superseding Indictment belong to ev3/Covidien, the medical device company for which Mr. Lu worked before he joined Edwards. Ev3 was not mentioned in the original Indictment. The four alleged ev3 trade secrets form the bases for Counts 1 through 8 of the Superseding Indictment. The four remaining alleged trade secrets, which form the bases of Counts 9 through 12, purportedly belong to Edwards, but they are not the four trade secrets which the government alleged in the original Indictment. The SOPs are nowhere to be found in the Superseding Indictment. The Superseding Indictment instead alleges four brand new Edwards trade secrets, not a single one of which was identified as a trade secret in the November 2012 memorandum by Edwards, in the complaint which closely followed, or in the original Indictment.

For purposes of this motion, five of the eight new alleged trade secrets are facially and legally defective as pled because they do not consist of, nor do they contain any identified or

1 identifiable, information. Moreover, at no time during the entire four-year prosecution of Mr. Lu
2 has it ever been alleged, in any pleading or discovery produced by the government, that he
3 physically possessed the actual products that are now alleged as trade secrets in the Superseding
4 Indictment.

**LEGAL STANDARD**

Mr. Lu moves to dismiss Counts 1, 2, 5, 6, 9, 10 and 11 of the Superseding Indictment pursuant to Federal Rule 12(b)(3)(B), which provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). Under the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and must include the "statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1).

On a pretrial motion to dismiss, the facts alleged by the government must be taken as true. *United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999). An indictment may be dismissed, however, where it "fails to allege the essential facts constituting the offense charged." *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000). Indeed, "an important corollary purpose" of the requirement that an indictment state the elements of an offense is "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *Russell v. United States*, 369 U.S. 749, 768 (1962). Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute. *See, e.g.*, *Pirro*, 212 F.3d at 91, 93 (affirming dismissal where Government's proposed proof would not establish a crime within the terms of the statute).

Oftentimes, the adequacy of an indictment will turn on the interpretation of statutory language. "Federal crimes, of course, are solely creatures of statute." *Dowling v. United States*,

473 U.S. 207, 213 (1985) (citation omitted). "[S]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Albertini*, 472 U.S. 675, 680 (1985). In this case, as detailed below, the plain language employed by Congress clearly requires a prosecution under the Economic Espionage Act to be based upon the possession or misappropriation of information, as opposed to physical products. Thus, even when taking the Government's allegations in the Superseding Indictment as true, dismissal is required where the allegations fail to meet the statutory definition of a trade secret.

## ARGUMENT

A. <u>The Superseding Indictment Charges Defendant Lu with Theft of Physical Products, Which Cannot be Trade Secrets Under the Statutory Definition</u>

The Superseding Indictment identifies eight trade secrets in total, four purportedly belonging to ev3, and four to Edwards. *See* Docket No. 117. Mr. Lu is charged with receipt and possession of, with the intent to convert, all eight alleged trade secrets pursuant to 18 U.S.C. § 1832(a)(3) and (4). He is also charged under 18 U.S.C. § 1832(a)(1) and (4) with actually stealing the four ev3 trade secrets.

Of the eight trade secrets alleged in the Superseding Indictment, five are in fact physical products which were, according to the language in the Superseding Indictment, marketed or intended to be marketed for sale to the public.

- Alleged Trade Secret #1 is identified as a "clot retrieval device," which is a "mechanical thrombectomy device with an expandable tip able to retrieve and remove blood clots from a blood vessel." *See* Docket No. 117 at 2. According to the Superseding

Indictment, ev3 intended to sell this device throughout the United States, Europe, and Asia.² *Id.*

- Alleged Trade Secret #2 is identified as a "vascular remodeling device," which is a "stent that bridged the neck of an aneurysm, strengthening the blood vessel to prevent a blood clot from bursting." *Id.* According to the Superseding Indictment, ev3 intended to sell this device throughout the United States, Europe, and Asia.³ *Id.*

- Alleged Trade Secret #5 is the "SAPIEN transcatheter heart valve and delivery system," which is a "replacement heart valve with a transfemoral delivery system." *See* Docket No. 117 at 4. According to the Superseding Indictment, Edwards had already made this device commercially available throughout the United States, Europe, and Asia. *Id.*

- Alleged Trade Secret #6 is the "CENTERA transcatheter aortic valve and delivery system, which is "an ultra low-profile self-expanding aortic valve with a motorized delivery system." *Id.* According to the Superseding Indictment, Edwards intended to sell this device throughout the United States, Europe, and Asia.

- Alleged Trade Secret #7 is the "INTUITY Elite replacement heart valve and delivery system," which is a "heart valve requiring fewer sutures and a less invasive surgery than other heart valves on the market." *See* Docket No. 117 at 4. According to the Superseding Indictment, Edwards had already made this device commercially available throughout the United States, Europe, and Asia. *Id.*

---

² Although not specified in the Superseding Indictment, ev3/Covidien had a Clot Retrieval Device called the Solitaire Flow Restoration (FR) device. Mr. Lu was one of key development and testing engineers for the Solitaire FR device, which was already commercially available in 2010.

³ Again, ev3/Covidien had a Vascular Remodeling Device called the Solitaire Aneurysm Bridging (AB) device. Mr. Lu was one of key development and testing engineers for an upgraded version of Solitaire AB device, which was commercially available back in 2007.

Under the Economic Espionage Act, these physical products are not, and cannot legally be, "trade secrets." The statute unambiguously defines "trade secrets" as information, not as physical products. Title 18 U.S.C. § 1839(3) states that:

> the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

While the statutory definition of "trade secret" is broad, it is plainly limited to "information." 18 U.S.C. § 1839(3). The United States Department of Justice's own Prosecuting Intellectual Property Crimes Manual says as much:

> The government should ascertain the **specific information** the victim claims is a trade secret at the outset of the investigation. "[A] prosecution under the [EEA] **must establish a particular piece of information** that a person has stolen or misappropriated." 142 Cong. Rec. 27, 117 (1996) (citations in original) (emphasis added).

*See* U.S. Department of Justice, *Prosecuting Intellectual Property Crimes*, 161-163 (4th ed. 2013) ("DOJ IP Manual"), at 162. The DOJ IP Manual goes on to list a number of examples of trade secrets in criminal prosecutions. These include "[p]rocesses, methods, and formulas for an anti-cancer drug," "[b]iological strains and plasmids," and "[p]hotographs of tire-assembly

1 machine." DOJ IP Manual, at 164.[4]  In each of these cases, the defendant was charged with
2 misappropriating "information," not a physical product.

3    Because the statutory language itself is so clear, undersigned counsel has not found any
4 court decision interpreting the EEA which directly states that a commercial product cannot be a
5 trade secret.  The Central District of California, however, decided a case in 2011 interpreting the
6 California Uniform Trade Secret Act, which employs a similar definition of trade secret as the
7 EEA.[5]  In *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F.Supp.2d 911, 970 (C.D. Cal. 2011),
8 Judge Carter interpreted California's Uniform Trade Secrets Act to prohibit the plaintiff in a civil
9 action from classifying a commercially-available product as a trade secret.  The court wrote,
10 "Mattel makes no effort to describe the 'trade secret' elements of this commercially-available
11 product, other than to summarily claim that the system was customizable and customized by
12 Mattel. The fact that Mattel's vague description precludes the Court from effectively determining
13 whether information about the [product] derives independent economic value from not being
14 generally known is precisely why California requires that a trade secret be alleged with
15 particularity." *Id.*

16    The same logic applies in the instant case. By charging an entire product as a trade secret
17 without specifying which information related to, or helping to comprise, the product is a secret,

---

[4] For each of these examples, the DOJ IP Manual includes a citation. The citations for these three examples, which come closest to being "products," are: *United States v. Hsu*, 155 F.3d 189 (3d Cir. 1998) (processes for anti-cancer drug); *United States v. Huang*, Nos. 1:10-cr-102, 1:11-cr-163 (S.D. Ind. 2010) (biological strains and plasmids); *United States v. Howley*, 2013 WL 399345, at *3 (6th Cir. Feb. 4, 2013) (photographs of tire-assembly machine used in tire factory). None of these cases indicate that an actual product intended for sale in the marketplace can be a trade secret.

[5] As the Ninth Circuit held in *United States v. Chung,* 659 F.3d 815, 824-25 (9th Cir. 2011), the EEA definition of "trade secret" derives from the definition that appears in the Uniform Trade Secrets Act, and federal courts therefore "consider instructive interpretations of state laws that adopted the UTSA definition without substantial modification." 659 F.3d at 825.

the government makes it impossible for Mr. Lu or the Court effectively to determine "whether information about the [product] derives independent economic value from not being generally known." 782 F.Supp.2d at 970. And, unlike *Mattel*, the present case arises in the criminal context, where heightened due process considerations make these issues even more acute. By charging an entire product as a trade secret in a criminal prosecution under 18 U.S.C. § 1832, the government fails to give a criminal defendant fair warning of what he is being charged with misappropriating.

Although the Economic Espionage Act does mention the word "product" in one section, this inclusion actually argues against the government's effort to classify entire products as trade secrets. The EEA specifically requires that, in order for a person to be guilty of the crime of theft of trade secrets, the trade secret must be "*related* to a product or service used in or intended for use in interstate or foreign commerce." 18 U.S.C. § 1832(a) (emphasis added). The statute's requirement that information—the trade secret—be "related to a product" necessarily implies that the product itself is not the trade secret. *Id.* This further supports the conclusion that a physical product cannot, itself, be a trade secret.

Based upon the plain language of the Economic Espionage Act and the instructive holding in *Mattel*, the government cannot allege entire physical products as trade secrets. Therefore, pursuant to Federal Rule of Criminal Procedure 12(b) and the government's failure to state a proper offense, Defendant Lu respectfully requests that the Court dismiss Counts 1, 2, 5, 6, 9, 10, and 11 of the Superseding Indictment.

B. <u>The Products Alleged as Trade Secrets in this Case Cannot be Trade Secrets Because the Owner Has Not Taken Reasonable Measures to Keep them Secret and Because they are Readily Ascertainable Through Proper Means</u>

The statutory definition of trade secret sets forth two requirements for a piece of information to be a trade secret—to qualify as a trade secret, both requirements must be met. The

first requirement is that "the owner thereof has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A).  The second requirement is that "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3)(B). The physical products charged as trade secrets in this case fail both tests.

1. Edwards Has Not Taken Reasonable Measures to Keep Trade Secrets #5 and #7 Secret Because Edwards Has Already Sold Them in Countries Worldwide

In addition to the general rule that physical products intended for sale cannot be "trade secrets" under 18 U.S.C. § 1839(3), two of the charged trade secrets also do not qualify as trade secrets because, according to the Superseding Indictment, *Edwards had already sold them to customers around the world during the relevant time period*.  The Superseding Indictment explicitly states: "Edwards sold TRADE SECRET #5 throughout the United States and Europe." See Docket No. 117 at 4.  Later on that same page, the government alleges, "Edwards sold TRADE SECRET #7 throughout the United States, Europe, and Asia." *Id.*  Notably, these statements describe sales that occurred *before* Mr. Lu's alleged misappropriation of the products.

Defendant Lu's argument on this point is simple.  If Trade Secrets #5 and #7 have already been sold by Edwards throughout the world, it is clear that the owner has not taken reasonable measures to keep the items "secret."  Similarly, if the alleged trade secrets themselves have been sold to buyers around the world, they cannot have independent economic value from "not being generally known" or "readily ascertainable" by the public. 18 U.S.C. § 1839(3). Rather, the value of these "trade secrets" to the company comes from the fact that they are being sold to outside buyers and *not* being kept secret.

While the statute acknowledges that some kinds of tangible objects—such as prototypes or patterns—may contain or otherwise be conduits of information, the inclusion of these types of

objects not made or intended to be marketed for sale makes clear that the statutory definition of "trade secret" does not extend to goods intended for public sale, particularly if alleged as trade secrets in their entirety. Again, the formula for Coca-Cola may be a trade secret, but the can of Coca-Cola certainly cannot be. Because alleged trade secrets 1, 2, 5, 6, and 7 all are defined in the Superseding Indictment as entire products marketed or intended to be marketed, they are distinct from prototypes or patterns—which are conduits of information never intended to be sold in the market, and which can be kept secret even if the related product is commercially available.

2. The Products Charged as Trade Secrets Do Not Derive Independent Economic Value from Not Being Generally Known

As stated above, according to the statutory definition of a trade secret under § 1839(3) and controlling case law, in order for information to be a trade secret, it must not be generally known to or readily ascertainable by the public and must derive economic value from the fact that it is a secret. *See, e.g., United States v. Chung,* 659 F.3d 815, 824-25 (9th Cir. 2011). Information is generally considered to be readily ascertainable where "it is available in trade journals, reference books, or published materials." *Id.* at 825. Here, even if the Court were to make the unprecedented finding that a physical product in its entirety somehow qualifies as "information" under 18 U.S.C. § 1839(3), by placing or intending to place the product into the public marketplace, the "information" would be readily ascertainable by anyone. This is particularly true in the medical device field, where inspection and reverse engineering of products in the marketplace would, by definition, negate any protection under the EEA. More specifically, such products could not provide any independent economic value to the company from the fact that they are a secret, because they would not be secret at all.

///

///

**CONCLUSION**

For the foregoing reasons, Defendant Lu respectfully requests that the Court dismiss Counts 1, 2, 5, 6, 9, 10, and 11 of the Superseding Indictment.

Date:   September 30, 2016                    Respectfully submitted,

                                                 /S/ Daniel Olmos
                                                Daniel Olmos
                                                Attorney for Defendant WENFENG LU