FILED

2017 NOV 15  AM 11:38

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2017 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WENFENG LU, <br><br> Defendant. | SA CR No. 12-277(C)-AG <br><br> **T H I R D** <br> **S U P E R S E D I N G** <br> **I N D I C T M E N T** <br><br> [18 U.S.C. § 1832(a): Unauthorized Possession and Attempted Possession of Trade Secrets; 18 U.S.C. §§ 1834 and 2323: Forfeiture] |

The Grand Jury charges:

INTRODUCTION

At all times relevant to this Third Superseding Indictment:

A.  ev3/Covidien

1.  ev3/Covidien ("ev3") was a publically traded corporation whose business focused on the development and manufacture of vascular and neurovascular medical devices.  ev3 maintained a corporate office in Orange County, within the Central District of California.  ev3 sold and shipped, and intended to sell and ship its products in interstate and foreign commerce.

2. ev3 developed technology and information to build and manufacture a clot retrieval device with an expandable tip. The clot retrieval device was a mechanical thrombectomy device with an expandable tip able to retrieve and remove blood clots from a blood vessel. ev3 intended to sell the device throughout the United States, Europe, and Asia. ev3's research and development cost for this device was between $250,000 and $2.8 million. The following document contained ev3's trade secrets with respect to this information and technology ("TRADE SECRET #1"): file labeled "2975_00306880" containing excerpts of ev3 laboratory notebooks used by defendant LU and Anh Cam, dated June and July 2010.

3. ev3 developed technology and information to build and manufacture Balloon Guide Catheters ("BGC"). The standard operating procedure is a detailed written instruction intended to ensure uniformity of the performance of the BGC. ev3 used the standard operating procedures in devices shipped throughout the United States, Europe, and Asia. The following documents contained ev3's trade secrets with respect to this information and technology ("TRADE SECRET #2"):

 a. "Manufacturing Procedure defines the materials and methods required to prepare the braid for the 8F Balloon Guide Catheter (BGC);"

 b. MP BGC4, Rev X1, "MANUFACTURING PROCEDURE Inner Tubing Lamination for BGC;" and

 c. MP BGC6, Rev X1, "MANUFACTURING PROCEDURE Outer Tubing Lamination for BGC."

4. ev3 developed technology and information to build and use a heat shrink skiver. A heat shrink skiver is a device used to

separate polymer from metal on a raw material. ev3 used the device in devices shipped throughout the United States, Europe, and Asia. The following documents contained ev3's trade secrets with respect to this information and technology ("TRADE SECRET #3"):

    a. Schematic of heat shrink skiver; and

    b. Document No. 07-623, Rev M, "MANUFACTURING PROCEDURE FEP REMOVAL PROCEDURE," dated August 10, 2007.

5. ev3 developed technology and information to build and manufacture a clot retrieval device with an expandable stent. The clot retrieval device was a mechanical thrombectomy device with an expandable stent able to retrieve and remove blood clots from a blood vessel. ev3 sold the clot retrieval device throughout the United States, Europe, and Asia. ev3's cost to bring this device to market was in excess of $20 million. The following documents contained ev3's trade secrets with respect to this information and technology ("TRADE SECRET #4"):

    a. Document No. 31104, Rev X1, "SOLO 5-20 LASER CUT STENT," dated July 21, 2006;

    b. Document No. 31113, Rev 3, "Solitaire 5-30 EP," dated July 21, 2006;

    c. Document No. 30941, Rev A, "SOLO STENT PUSH WIRE .015"," dated January 2, 2007;

    d. Document No. 41210, Rev A, "MICRO BLAST FIXTURE 3 and 4 MM SOLITAIRE AB," dated September 3, 2007;

    e. TR07-128, Rev A, "Solitaire Stent – Design Verification Testing," dated October 18, 2007;

    f. PR07-178, Rev A, "Solitaire™ AB – Process Validation 4mm and 6mm," dated October 19, 2007

     g.    TR07-178, Rev A, "Solitaire™ AB Process Validation," dated November 15, 2007;

     h.    Document No. 08-0783, Rev G, "MANUFACTURING PROCEDURE Heat Setting, Solitaire™ AB," dated November 4, 2008;

     i.    Lot Release Checklist and "QUALITY PROCEDURE QC FINAL INSPECTION SOLITAIRE™ AB," dated December 2008;

     j.    Document No. 09-0578, Rev R, "MANUFACTURING PROCEDURE Welding Processes, SOLITAIRE," dated August 19, 2009;

     k.    Document No. 09-0894, Rev G, "MANUFACTURING PROCEDURE Detach Wire Subassembly, SOLITAIRE," dated December 7, 2009;

     l.    PR10-092, Rev. A, "SOLITAIRE – DOE FOR ADHESIVE (Detach Wire Assembly)," dated April 2010;

     m.    Document No. 10-0220, Rev AA, "QUALITY PROCEDURE QC FINAL INSPECTION, SOLITAIRE," dated May 18, 2010;

     n.    Document No. NV10201, Rev V, "MANUFACTURING PROCEDURE EP Solitaire / Detach Wire Assembly, SOLITAIRE," dated June 1, 2010;

     o.    Document No. NV10236, Rev M, "SPECIFIC CONFORMANCE MATRIX SOLITAIRE™ Neurovascular Remodeling Device," dated July 13, 2010;

     p.    Document No. NV10338, Rev T, "QUALITY PROCEDURE LASER CUT STENT RECEIVING INSPECTION PROCEDURE," dated July 16, 2010;

     q.    Document No. 10-0202, Rev V, "MANUFACTURING PROCEDURE SOLITAIRE Final Inspection and Sheathing," dated July 22, 2010;

     r.    Document No. NV10528, Rev N, "Design Failure Mode, Effect and Criticality Analysis," dated September 27, 2010; and

     s.    Document No. NV10694, Rev Y, "Quality Monitoring Plan, Solitaire AB and FR," dated November 24, 2010.

6. ev3 developed technology and information to build and manufacture a catheter hub. A catheter hub is a component of a catheter that provides ports for loading items into a catheter and provides a handle for manipulation. ev3 intended to sell the catheter hub in devices throughout the United States, Europe, and Asia. The following document contained ev3's trade secrets with respect to this information and technology ("TRADE SECRET #5"): schematic of catheter hub, Size B, dated December 30, 2008.

7. TRADE SECRETS #1-5 were considered trade secret information by ev3 and were protected by ev3 as confidential and proprietary information. TRADE SECRETS #1-5 were not generally known to the public or to others outside ev3 who would be able to obtain economic value from the information, nor were TRADE SECRETS #1-5 readily ascertainable using proper means by such persons. TRADE SECRETS #1-5 derived independent economic value from not being generally known or readily ascertainable by proper means by such persons. ev3 used a number of measures to protect its trade secrets and its confidential proprietary information, including the following:

    a. Limiting physical access to the locations within the company where the trade secrets were stored through the use of security personnel and access badges;

    b. Limiting access to the trade secrets only to those who need them to perform their employment duties;

    c. Requiring employees to sign nondisclosure and confidentiality agreements that prohibited disclosure of trade secrets and confidential and proprietary information and extended beyond the term of employment;

    d. Mandating visitor sign-in sheets and escorts;

  e. Providing training and instruction regarding the security and safeguarding of restricted and confidential business information; and

  f. Labeling trade secret documents as confidential.

 8. From in or around January 2009 through on or about October 7, 2011, defendant WENFENG LU ("LU") was employed as a Research and Development Staff Engineer at ev3 in Orange County, California. Among other things, defendant LU was responsible for developing the delivery system for the clot retrieval device related to TRADE SECRET #1.

B. <u>Edwards Lifesciences Corporation</u>

 9. Edwards Lifesciences Corporation ("Edwards") was a publically traded corporation whose business focused on the design and manufacture of heart valves and hemodynamic monitoring devices. Edwards' corporate headquarters was located in Orange County, within the Central District of California. Edwards sold and shipped, and intended to sell and ship its products in interstate and foreign commerce.

 10. Edwards developed technology and information to build and manufacture the SAPIEN transcatheter heart valve and delivery system. The SAPIEN transcatheter heart valve and delivery system was a replacement heart valve with a transfemoral delivery system. Edwards sold the SAPIEN transcatheter heart valve and delivery system throughout the United States and Europe. The development costs for this device exceeded $500 million. The following documents contained Edwards' trade secrets with respect to this information and technology ("TRADE SECRET #6"):

  a. Protocol No. 16805, Rev A, dated August 6, 2009;

      b.    Document No. 52860, SOP4237, Rev A, dated December 13, 2007; and

      c.    Document No. 75615, SOP5615, Rev X4, dated March 29, 2011.

11. Edwards developed technology and information to build and manufacture the CENTERA transcatheter aortic valve and delivery system. The CENTERA transcatheter aortic valve and delivery system was an ultra low-profile self-expanding aortic valve with a motorized delivery system. Edwards intended to sell the CENTERA transcatheter aortic valve and delivery system throughout the United States, Europe, and Asia. The development costs for this device exceeded $100 million. The following documents contained Edwards' trade secrets with respect to this information and technology ("TRADE SECRET #7"):

      a.    Document No. DRD 12544, Rev A, dated November 17, 2009 and January 18, 2010;

      b.    Document No. DRD 13147, Rev A, dated May 11, 2010;

      c.    Document No. 17496, Rev A, dated August 14, 2009;

      d.    SOP6251.100, Rev X1.

12. Edwards developed technology and information to build and manufacture the INTUITY Elite replacement heart valve and delivery system. The INTUITY Elite replacement heart valve and delivery system was a heart valve requiring fewer sutures and a less invasive surgery than other heart valves on the market. Edwards sold the INTUITY Elite replacement heart valve and delivery system throughout the United States, Europe, and Asia. The following documents contained Edwards' trade secrets with respect to this information and technology ("TRADE SECRET #8"):

       a.    Draw No. 155867, Rev A, dated March 1, 2012;

       b.    Document No. 086868, SOP5125, Rev F, dated July 13, 2012; and

       c.    Document No. 086868, SOP5652, Rev G, dated July 13, 2012.

13. Edwards developed technology and information to build, manufacture, and use balloon technology. Balloon technology allowed Edwards' products to be inserted into blood vessels. Edwards used balloon technology in devices shipped throughout the United States, Europe, and Asia. The following documents contained Edwards' trade secrets with respect to this information and technology ("TRADE SECRET #9"):

       a.    Draw No. 195685, Rev L, dated December 1, 2005;

       b.    Document No. 086113, SOP4752, Rev H, dated June, 15, 2012;

       c.    Document No. 086387, SOP3732, Rev AH, dated June 25, 2012; and

       d.    Draw No. 195686, Rev AG, dated August 2, 2011.

14. TRADE SECRETS #6-9 were considered trade secret information by Edwards and were protected by Edwards as confidential and proprietary information. TRADE SECRETS #6-9 were not generally known to the public or to others outside Edwards who would be able to obtain economic value from the information, nor were TRADE SECRETS #6-9 readily ascertainable using proper means by such persons. TRADE SECRETS #6-9 derived independent economic value from not being generally known or readily ascertainable by proper means by such persons. Edwards used a number of measures to protect its trade

secrets and its confidential proprietary information, including the following:

    a.    Limiting physical access to the locations within the company where the trade secrets were stored through the use of security personnel and access badges;

    b.    Limiting access to the trade secrets only to those who need them to perform their employment duties;

    c.    Requiring employees to sign nondisclosure and confidentiality agreements that prohibited disclosure of trade secrets and confidential and proprietary information and extended beyond the term of employment;

    d.    Mandating visitor sign-in sheets and escorts;

    e.    Providing training and instruction regarding the security and safeguarding of restricted and confidential business information; and

    f.    Labeling trade secret documents as confidential.

15.    From on or about November 1, 2011 through on or about November 16, 2012, in Orange County, within the Central District of California, defendant LU was employed as a Research and Development Staff Engineer at Edwards in Orange County, California. Among other things, defendant LU was responsible for developing the catheter delivery system for the CENTERA transcatheter aortic valve and delivery system related to TRADE SECRET #7.

## COUNTS ONE THROUGH NINE

[18 U.S.C. § 1832(a)(3), 1832(a)(4)]

16. The allegations set forth in paragraphs One through Fifteen of this Third Superseding Indictment are incorporated herein as if set forth in full.

17. On or about November 16, 2012, in Orange County and Los Angeles County, within the Central District of California and elsewhere, defendant WENFENG LU ("LU"), with the intent to convert a trade secret to the economic benefit of someone other than ev3/Covidien ("ev3") and Edwards Lifesciences Corporation ("Edwards"), and intending and knowing that the offense would injure ev3 and Edwards, did knowingly receive and possess a trade secret, knowing the same to have been stolen and appropriated, obtained, and converted without authorization, and attempt to do so, the following trade secrets owned by ev3 and Edwards, which were related to and included in products that were produced for and placed in interstate and foreign commerce:

| COUNT | OWNER | TRADE SECRET |
|---|---|---|
| ONE | ev3 | TRADE SECRET #1 |
| TWO | ev3 | TRADE SECRET #2 |
| THREE | ev3 | TRADE SECRET #3 |
| FOUR | ev3 | TRADE SECRET #4 |
| FIVE | ev3 | TRADE SECRET #5 |
| SIX | Edwards | TRADE SECRET #6 |
| SEVEN | Edwards | TRADE SECRET #7 |
| EIGHT | Edwards | TRADE SECRET #8 |
| NINE | Edwards | TRADE SECRET #9 |

18. Defendant LU's conduct was in violation of Title 18, United States Code, Section 1832(a)(3) and (a)(4).

FORFEITURE ALLEGATION

[18 U.S.C. §§ 1834 & 2323]

19. Pursuant to Title 18, United States Code, Sections 1834 and 2323, if the defendant WENFENG LU ("LU") is convicted of any of the offenses set forth in Counts One through Nine of this Third Superseding Indictment, he shall forfeit to the United States the following property:

    a. Any article, the making or trafficking of which is prohibited by the commission of any offense for which defendant LU is convicted;

    b. Any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of said offense, including but not limited to the following property seized from defendant LU on or about November 16, 2012:

        i. White & Yellow USB;

        ii. USB 3.0 found in wallet;

        iii. USB Data Traveler 2GB;

        iv. Sony Camera and SD card;

        v. Hewlett Packard laptop;

        vi. Lenovo G550 laptop;

        vii. Western hard drive, model number 4908A;

        viii. Western hard drive, model number 0312B;

        ix. Verbatim hard drive, model number WD200GB;

        x. Western hard drive, model number WD800JB;

        xi. Seagate hard drive, model number ST310212A; and

        xii. Hard drive (not labeled), model number SV0432D.

      c.    Any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of said offense.

20.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2), defendant LU shall forfeit substitute property if, by any act or omission of the defendant, the property described in paragraph 21, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

                                          A TRUE BILL

_____
Foreperson

SANDRA R. BROWN  
Acting United States Attorney

*/s/ Patrick R. Fitzgerald*

PATRICK R. FITZGERALD  
Assistant United States Attorney  
Chief, National Security Division

CHRISTOPHER D. GRIGG  
Assistant United States Attorney  
Chief, Terrorism and Export Crimes Section

GREGORY STAPLES  
Assistant United States Attorney

MARK TAKLA  
Assistant United States Attorney